UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PETER S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 2:20cv483 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since November 28, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obstructive sleep apnea (OSA); insomnia; fibromyalgia; degenerative disc disease of the cervical and lumbar spine; mild spurring of the knees; history of alcohol use; unspecified depressive disorder; and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. The claimant can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and occasionally balance, kneel, crouch, and crawl but frequently stoop. The claimant can occasionally interact with coworkers and supervisors but no interaction with the public. The claimant can understand, remember, and carryout unskilled tasks. The claimant requires no high stress work, which is no assembly-line work and no work with an hourly or less quota requirement.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 20, 1983 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

3

economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 28, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-25).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on October 17, 2021. On November 19, 2021 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on December 3, 2021. Upon full review of the record in this cause, this Court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

case, Step 5 was the determinative inquiry.

Plaintiff was born on January 20, 1983, and was 35 years old on his filing date. (Tr. 170). He graduated from high school and also has three years of college. (Tr. 38). He has past relevant work as a sales agent, police officer, office manager, market manager, and motorcycle salesman. (Tr. 24).

As Plaintiff's arguments relate to his mental impairments, only the evidence related to those impairments will be discussed. In January 2017, Plaintiff saw Dr. Shephard for psychiatric medication management. (Tr. 565). Dr. Shephard's assessment was that Plaintiff had ongoing symptoms of PTSD (triggered trauma-related flashbacks, trauma related intrusive thought, emotional numbness, anger, irritability, concentration difficulties, and sleep disturbances), major depression, and panic symptoms which has benefitted from therapy and medication. (Tr. 566).

In September 2017, Plaintiff presented to Dr. Kadah for a routine follow-up appointment. (Tr. 561). At this appointment, Dr. Kadah noted that Plaintiff had obesity, DJD of hips and knees, fibromyalgia, and depression/PTSD/Panic. *Id*.

The next month, Plaintiff was taken to Franciscan Alliance after an apparent suicide attempt. (Tr. 289). Plaintiff ingested an unknown amount of Xanax in conjunction with alcohol. *Id*. Plaintiff later admitted to alcohol use and taking Xanax stating that "I did not take enough." (Tr. 293). The diagnosis at the emergency department was that Plaintiff had moderate major depression and polysubstance abuse. (Tr. 298). In his psychological evaluation at Franciscan Alliance he stated, "yesterday was a really bad day, but my life is very good," he also recognized that he needed to cut back on his alcohol intake. (Tr. 319-320). A few days later Plaintiff underwent psychological evaluation at the VA in which he expressed feelings of anxiousness and

5

inability to sleep well (Tr. 548). He admitted to drinking a lot and becoming suicidal. (Tr. 549). He reported his PTSD was related to his service in Iraq and Afghanistan where he saw children die. *Id*.

In December 2017, Plaintiff presented to Dr. Stolarczyk in which he described his mood as bad. (Tr. 547). He expressed feelings of hopelessness, low energy/motivation, sleeping 5-6 hours a night, nightmares several nights a week, being easily irritated and anxious, and that he failed his last semester in college. *Id*. The next month, he met with Dr. Asadi. (Tr. 542). Dr. Asadi did a risk assessment in which she found that Plaintiff had substance abuse disorder and was easily distracted. *Id*. She listed his significant issues as very anxious and hypervigilant, nightmares 2-3 times per week, poor concentration, and chronic muscle ache from fibromyalgia. (Tr. 545). In February 2018, Dr. Asadi diagnosed Plaintiff with PTSD and alcohol use disorder. (Tr. 540). She also assessed Plaintiff as having chronic muscle ache from fibromyalgia with "throbbing" pain after exercise, as well as a history of PTSD symptoms that have persisted over time in the context of multiple medication changes. (Tr. 541).

In July 2018, Plaintiff presented to Dr. Altman, his psychologist. (Tr. 453). At this appointment, Dr. Altman's impression was that Plaintiff suffered from PTSD, fibromyalgia, alcohol use above sensible limits, and possible ADD. *Id*. Dr. Altman noted that in regards to Plaintiff's PTSD it stemmed from his service in which he watched children die and that he experienced repeated disturbing and unwanted memories of the stressful experience, repeated disturbing dreams of the stressful experience, extremely upset when things remind him of the stressful experience, extreme strong physical reaction to memories, and extreme avoiding. (Tr. 454-455).

In August 2018, Plaintiff presented to Dr. Philipps for a psychiatric appointment. (Tr. 492). She noted that Plaintiff's suicidal ideations were "horrific" and happened every day. *Id*. She noted that Plaintiff used alcohol as a coping mechanism. (Tr. 493). She observed anger on exam. (Tr. 494). Her impressions included that Plaintiff might have cluster B personality disorder. (Tr. 495). Plaintiff expressed having increased suicidal ideations due to chronic pain and described rehearsals of putting a loaded gun in his mouth. (Tr. 492-494).

In October 2018, Plaintiff had an appointment with Dr. Altman in which he expressed that he associated his anger with Lyrica. He stated that it had been a very "rageful" month and that he was having trouble controlling his anger. (Tr. 421). He stated he was not sleeping well and if he didn't have medicine, he would likely not sleep at all. *Id*.

In November 2018, state agency psychologist Dr. Shipley, Ph.D., reviewed the evidence and opined that there was insufficient information to assess Plaintiff's alleged impairments. (Tr. 76).

In a January 2019 appointment with Dr. Kadah, Plaintiff expressed that he had wishes that he were dead and actual thoughts of killing himself. (Tr. 585). In November 2019, at his mental health screening, unspecified cognitive impairment was added to his list of diagnoses. (Tr. 863). It was noted that Plaintiff had history of head injury and heavy alcohol abuse. *Id*. During this screening, he described his pain as a 9/10 and admitted to having suicidal ideations in the last 30 days. (Tr. 864).

In February 2019 state agency psychologist Dr. Kari Kennedy, Ph.D., reviewed the

7

evidence at the DIB reconsideration level[2]. (Tr. 81-91). Plaintiff was found to be moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. 89). Plaintiff was further found to be moderately limited in his ability to interact appropriately with the general public. (Tr. 90). In conclusion it was found that "[t]he evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks." (Tr. 90).

Later in February 2019, Dr. Kazi evaluated Plaintiff for VA benefits and completed a "Review Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire". Dr. Kazi opined that Plaintiff had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. (Tr. 686). Dr. Kazi also noted that Plaintiff endorsed persistent depressed mood and extreme hypervigilance. (Tr. 686). Plaintiff further informed Dr. Kazi that his alcohol intake had increased due to his worsening anxiety and depression.: (Tr. 688). Dr. Kazi concluded that Plaintiff "continues to meet criteria for PTSD based on DSM 5 diagnostic criteria. His PTSD is persistent and continues to significantly impact his social and occupational functioning." (Tr. 692).

A Mental Residual Functional Capacity Questionnaire was done by the VAMC on December 11, 2019. (Tr. 916). In this questionnaire the physician, Dr. Constance Philipps, M.D., noted that Plaintiff's side effects from medication were drowsiness, fatigue, lethargy, and

---

[2] Portions of the "Disability Determination Explanation" appear to have been prepared by J.V. Corcoran, M.D. (Tr. 88, 92), even though the ALJ nor either of the parties mention Dr. Corcoran by name.

8

stomach ache. *Id*. Dr. Philipps listed Plaintiff's prognosis as fair. (Tr. 917). When asked about Plaintiff's ability to work, Dr. Philipps stated the following areas where Plaintiff would be unable to meet competitive standards: remember work-like procedures, understand and remember short and simple instructions, carry out short instructions, maintain attention for two-hour segments, sustain ordinary routine without special supervision. (Tr. 918). Dr. Philipps stated the following areas where Plaintiff would have no useful ability to function: maintain regular attendance or be punctual, work in coordination with others without being unduly distracted, complete a normal workday without interruptions, perform at a consistent pace without an unreasonable amount of rest periods, accept instruction and respond appropriately to criticism from superiors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to change in a routine work setting, and deal with normal work stress. *Id*. Dr. Philipps also noted that Plaintiff would have no useful ability to function regarding understanding and remembering detailed instruction, carrying out detailed instructions, set realistic goals or make plans independently of others, and dealing with stress of semiskilled and skilled work. (Tr. 919). Dr. Philipps opined Plaintiff would be unable to meet competitive standards in the following: interact appropriately with the general public, travel in unfamiliar place, and use public transportation. *Id*. Dr. Philipps also stated that Plaintiff's condition and treatment would make him absent from work more than four days per month. (Tr. 920).

In support of remand, Plaintiff argues that the ALJ's findings as to his social/mental functional limitations are not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to provide any logical explanation for his evaluation of the opinions of Drs. Kennedy, Philipps, and Kazi. These doctors opined that Plaintiff had moderate limitations in

9

certain broad areas of social/mental functioning, including the ability to interact with others and to concentrate, persist, or maintain pace. (Tr. 86). They also opined that Plaintiff could "understand, remember, and carry out detailed but not complex tasks;" "relate on a superficial and ongoing basis with coworkers and supervisors;" "attend to tasks for a sufficient period to complete tasks;" and manage the stresses involved with detailed work-related tasks" (Tr. 89-91). The ALJ stated:

> As for the opinion evidence regarding the claimant's mental limitations, the initial State agency psychological consultant found there to be insufficient evidence (Exhibit 1A). The subsequent State agency psychological consultant indicated that the claimant could handle detailed, but not complex tasks. The consultant noted that the claimant could relate on a superficial and ongoing basis with coworkers and supervisors (Exhibit 3A). The undersigned does not find the opinion of the subsequent State agency consultant to be persuasive, as it is not supported by and consistent with the objective evidence. Specifically, the claimant is limited to simple tasks because of trouble with memory related to his fibromyalgia along with concentration issues due to his PTSD and depression (Exhibits 5E, 4F/175-177, 8F/101-104). The claimant has social limitations because of panic attacks and trouble in crowds due to his PTSD along with anger related to his alcohol use (Exhibits 4F/52-56, 7F/51, 9F/3-9, Hearing Testimony). The claimant requires no high stress work because of increased PTSD in stressful situations (Exhibit 5E). The claimant's provider opined in February 2019 that he would have difficulty interacting with others, as he was easily angered and irritable (Exhibit 7F/51). The undersigned finds the opinion to be somewhat persuasive, as it is somewhat consistent with and supported by the record. There is nothing to support further social limitations, as he had improvement in his symptoms with treatment (Exhibits 3F/16-17, 4F/77, 81-89, 6F/10-11, 19-20). The claimant's provider then completed an opinion finding that he had limited ability to make simple work-related decisions but no useful ability to complete a normal workday; get along with coworkers; and deal with normal work stress (Exhibit 12F). The undersigned does not find the opinion to be persuasive, as it is not persuasive [sic] with or supported by the record. The undersigned again notes that the claimant had improvement in his symptoms with medication and therapy (Exhibits 3F/16-17, 4F/77, 81-89, 6F/10-11, 19-20). The record shows the claimant to be pleasant and cooperative with no reported memory issues (Exhibits 4F/52-56, 65-68, 81-89, 171-173, 6F/10-11, 20, 10F/40-43).

(Tr. 23).

The ALJ also noted that, during the relevant period, Plaintiff was taking college classes, albeit intermittently (Tr. 20), that he "improved" with treatment (*i.e.*, medication and psychotherapy)(Tr. 21-22), and that he moved into a new home, was caring for his very young children, and was working at an internship (Tr. 22).

However, the ALJ's assertion that Plaintiff's mental health had improved is not supported by the record the ALJ cites. The ALJ's first citation in support of supposed "improvement" is to a treatment note which indicated "slight improvement in depression" but suicidal thoughts remained "chronic" and Plaintiff was noted to be "high risk" for suicide. (Tr. 339). Plaintiff was observed to be "moderately depressed and anxious." (Tr. 340). The ALJ further cited to a treatment note from Dr. Philipps which documented continued suicidal ideation, recent experience of "one of the worst panic attacks he has ever had," dissociation, and hypervigilance. (Tr. 451). Finally, the ALJ pointed to a clinician's telephone call to Plaintiff in November of 2018 with regard to concern he might commit suicide. (Tr. 596). The clinician noted Plaintiff "initially reported that he is 'much better,'" but after "further questioning, Veteran states that his mood, which had improved after a depressive episode lasting several weeks, is again in decline. Veteran continues to cope with suicidal ideation during times of stress, but denies having any intent or plan." The subsequent page, which the ALJ likewise cited as evidence of "improvement" appears to be the basis for aforementioned clinician's phone call. Plaintiff reported "struggling to control rage" and "that it gets easily triggered and consequently he tries to avoid people in general." (Tr. 597).

Notably, Dr. Kazi, Dr. Philipps, and Dr. Kennedy have opined significant limitation to Plaintiff's ability to interact with others on a consistent basis without exhibiting inappropriate

11

behavior or need to be limited to "superficial" interactions. Dr. Philipps had opined that Plaintiff was generally unable to meet competitive standards or had no useful ability to function in the mental abilities and aptitudes to do unskilled work (Tr. 918-19).

This Court has reviewed the medical evidence in the record and agrees with Plaintiff's assertion that the ALJ likely did not actually read the opinions he was supposedly evaluating[3]. The ALJ simply cherry-picked words and phrases from the opinions without explaining the context in which the words were used.  If "improvement" means "I didn't commit suicide today even though I felt like it" then that is hardly sufficient "improvement"on which to reject an entire line of medical evidence or to find a claimant capable of full-time work.  There are repeated opinions by Plaintiff's medical providers and the reviewing physicians that Plaintiff is suffering greatly from his mental conditions.  These opinions need to be fully and fairly evaluated. It is clear that the ALJ cherry-picked portions of the medical record to support his erroneous analysis of the physicians' opinions.  This is forbidden by well-established precedent and requires remand. *Gerstner v. Berryhill*, 879 F.3d 252, 261-63 (7th Cir. 2018); *Indoranto v. Barnhart*, 374 F.3d 370, 474 (7th Cir. 2004). Further, the entire decision is tainted by this error, requiring a redetermination of steps 2-5 of the sequential analysis on remand.

---

[3] It is concerning to the Court that the ALJ failed to even name the doctors whose opinions he was evaluating. This made reviewing the evidence and the ALJ decision a bit of a puzzle at times, which was not appreciated.

12

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: December 6, 2021.

                                                            s/ William C. Lee
                                                            William C. Lee, Judge
                                                            United States District Court